## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

```
KIRK BANDY,                        )
                                   )
                 Plaintiff,        )      CIVIL ACTION
                                   )
v.                                 )      No. 07-1386-MLB
                                   )
UNITED STATES OF AMERICA,          )
et al.,                            )
                                   )
                 Defendants.       )
_____)
```

## MEMORANDUM AND ORDER

This matter involves a <u>pro se</u> plaintiff[1], Kirk Bandy, who

initiated the case with a motion to quash a summons. (Doc. 1.) That

---

[1]   It has long been the rule that <u>pro se</u> pleadings, including
complaints and pleadings connected with summary judgment, must be
liberally construed.  <u>See</u> <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 & n.3
(10th Cir. 1991); <u>Hill v. Corrections Corp. of Am.</u>, 14 F. Supp. 2d
1235, 1237 (D. Kan. 1998).  This rule requires the court to look
beyond a failure to cite proper legal authority, confusion of legal
theories, and poor syntax or sentence construction.  <u>See</u> <u>Hall</u>, 935
F.2d at 1110.
     Liberal construction does not, however, require this court to
assume the role of advocate for the <u>pro se</u> litigant.  <u>See</u> <u>id.</u>
Plaintiff is expected to construct his own arguments or theories and
adhere to the same rules of procedure that govern any other litigant
in this district.  <u>See</u> <u>id.</u>; <u>Hill</u>, 14 F. Supp. 2d at 1237.  Plaintiff
claims he is entitled to "abnormal consideration" because of his <u>pro</u>
<u>se</u> status, but this is incorrect as a matter of law.  The only aspect
of this case which is "abnormal" is that plaintiff's submissions are
better drafted than those of most tax protesters.  That said,
plaintiff's assertions and arguments are just as frivolous as those
of less articulate individuals who seek to frustrate the legitimate
enforcement of the tax laws.
     Additionally, the court need not accept as true plaintiff's
conclusory allegations because no special legal training is required
to recount the facts surrounding alleged injuries.  <u>See</u> <u>Hill</u>, 14 F.
Supp.2d at 1237.  Thus, the court is required to accept as true only
plaintiff's well-pleaded and supported factual contentions.  <u>See</u> <u>id.</u>
In the end, plaintiff's <u>pro se</u> status, in and of itself, does not
prevent this court from granting summary judgment.  <u>See</u> <u>Northington</u>
<u>v. Jackson</u>, 973 F.2d 1518, 1521 (10th Cir. 1992).

"motion" generally states that defendants alleged plaintiff owed a tax debt; that defendants issued summonses to a list of entities, demanding production of documents regarding the alleged tax debt; that the summonses are noncompliant, which violates plaintiff's constitutional rights and the "Fair Credit Collection Act;" that defendants had no authority to issue the summonses; that the summonses were issued with wrongful intent and purpose; and that the Internal Revenue Service ("IRS") has no authority over plaintiff. (Doc. 1 at 1-25.)

The matter originally came before the court on defendants United States of America ("United States"), Commissioner of the Internal Revenue Service ("Commissioner"), and IRS Revenue Agent Frances Meyeres' ("Meyeres'") motion to dismiss. (Docs. 3 (motion), 4 (memorandum in support).) Plaintiff filed a "motion for extension of time to perform an act" (Doc. 5) to which defendants' replied (Doc. 6) as if it was plaintiff's response.

The court then sent all parties a letter, instructing them that because defendants attached an affidavit to their motion to dismiss, the court would convert the motion to a motion for summary judgment. The court then gave plaintiff additional time to file a response that "present[ed] the court with all materials pertinent to defendants' motion" and complied with the rules of the court. (Doc. 7.)

A week later, plaintiff filed a "response to respondents' motion to dismiss." (Doc. 8.) Plaintiff notified the court that he filed the response (Doc. 8) before he received the court's letter. Plaintiff was given an additional ten days to file his response to the converted motion for summary judgment. (Doc. 9.) Plaintiff then

-2-

filed his "response to respondents' motion for summary judgment" (Doc. 10) and a "memorandum of law in support of petitioner's response to respondents' motion for summary judgment" (Doc. 11). Defendants did not file a reply to plaintiff's most recent filings.

Defendants' converted motion for summary judgment (Doc. 3) is GRANTED for the reasons stated more fully herein.

## I.  FACTS

Defendant Meyeres is an IRS revenue agent conducting an investigation into the federal income tax liabilities of plaintiff for the tax periods 2000 through 2006. In furtherance of Meyeres' investigation, Meyeres issued and served IRS administrative summonses on fourteen entities[2] on November 14, 2007. The summonses directed that a representative of each entity appear before either Meyeres or an IRS designee on December 19, 2007, to give testimony and produce records for examination. Each of the summonses stated that personal appearance was not required if the requested information was provided by mail. The fourteen summonses, which contained the attestation required by 26 U.S.C. § 7603, were served on the summoned parties and on November 14, 2007, notices of the summonses were sent to plaintiff at his last known address by certified mail.

On November 21, 2007, Meyeres issued and served an IRS administrative summons on Bankwest of Kansas. The summons contained the attestation required by 26 U.S.C. § 7603 and directed that a

_____

[2]  These entities are: Bandy Enterprises, Inc., Commercial Sign Company, Forex Capital Markets, Bankwest, Sunflower Bank, Oliver & Associates Financial & Insurance Services, Edward Jones, Waddell & Reed, Inc., Farers & Merchants Bank of Colby, Gold Bank, Farm Credit of Western Kansas PCA/FLCA, First National Bank, Carey Thomas Hoover & Breault Investments, and Peoples State Bank.

representative of the entity appear before either Meyeres or an IRS designee on January 4, 2008, to give testimony and produce records for examination.  This summons also directed that personal appearance was not required if the requested information was provided by mail.  This summons was served, and notice was given to plaintiff by certified mail on November 21, 2007.

None of the documents sought by the summonses were already in the possession of the IRS.  Meyeres states in her affidavit that the testimony and documents were sought because they may be relevant to the IRS' investigation, that the summonses are "necessary for a complete and full investigation of Kirk Bandy's 2000 through 2006 federal income tax liabilities," and that the required administrative steps for issuance of the summonses were followed.  Meyeres' affidavit also states that the IRS has made no referral of plaintiff to the Justice Department[3] with respect to tax years 2000 through 2006.  Finally, Meyeres' affidavit states that all of Meyeres' actions in connection with the IRS investigation of plaintiff were "taken in good faith pursuant to [Meyeres'] official duties as an IRS revenue agent."

Plaintiff filed his "motion to quash a summons" on December 5, 2007, twenty-one days after notice of the November 14, 2007 summonses was mailed, but only fourteen days after notice of the November 21, 2007 summons was mailed.  With his motion, plaintiff attached a copy of the summonses issued to Bankwest, Bankwest of Kansas, Farmers & Merchants Bank of Colby, Forex Capital Markets, Bandy Enterprises, and

---

[3]    See 26 U.S.C. § 7602(d) (prohibiting the use of an administrative summons when there is a Justice Department referral in effect and defining when a referral is "in effect").

Sunflower Bank, Commercial Sign Company.  Plaintiff also attached a letter sent from him to Meyeres on November 21, 2007, which demanded that the IRS provide verification of any debt owed by plaintiff and demanded that the IRS cease all collection activity until such verification had been provided.  Plaintiff also attached a document he titled "affidavit," dated November 3, 2007, which contended that the IRS was acting outside its authority and also demanded certain documents from Meyeres.

## II.  SUMMARY JUDGMENT STANDARDS

The usual and primary purpose of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  An issue is "genuine" if sufficient evidence exists on each side "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim."  Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998) (citations omitted); see also Adams v. American Guarantee & Liability Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000) (citing Adler).  The mere existence of some factual dispute will not defeat an otherwise properly supported motion for summary judgment because the factual dispute must be material.  See Renfro v. City of Emporia, 948 F.2d 1529, 1533 (10th Cir. 1991).

Defendant initially must show both an absence of a genuine issue

-5-

of material fact and entitlement to judgment as a matter of law.  See Adler, 144 F.3d at 670.  Because plaintiff bears the burden of proof at trial, defendant need not "support [its] motion with affidavits or other similar materials negating [plaintiff's]" claims or defenses. Celotex, 477 U.S. at 323 (emphasis in original).  Rather, defendant can satisfy its obligation simply by pointing out the absence of evidence on an essential element of plaintiff's claim.  See Adler, 144 F.3d at 671 (citing Celotex, 477 U.S. at 325).

If defendant properly supports its motion, the burden then shifts to plaintiff, who may not rest upon the mere allegation or denials of its pleading, but must set forth specific facts showing that there is a genuine issue for trial.  See Mitchell v. City of Moore, 218 F.3d 1190, 1197-98 (10th Cir. 2000).  In setting forward these specific facts, plaintiff must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." Adler, 144 F.3d at 671.  If the evidence offered in opposition to summary judgment is merely colorable or is not significantly probative, summary judgment may be granted.  See Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 533 (10th Cir. 1994).  Plaintiff "cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial."  Conaway v. Smith, 853 F.2d 789, 793 (10th Cir. 1988).  Put simply, plaintiff must "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

Certain local rules further govern the presentation of facts and

-6-

evidence.  Local Rule 56.1 requires the movant to set forth a concise statement of material facts.  D. Kan. Rule 56.1.  Each fact must appear in a separately numbered paragraph and each paragraph must refer with particularity to the portion of the record upon which the defendant relies.  See id.  The opposing memorandum must contain a similar statement of facts.  Plaintiff must number each fact in dispute, refer with particularity to those portions of the record upon which he relies and, if applicable, state the number of the defendants' fact that he disputes.  The court may, but is not obligated to, search for and consider evidence in the record that would rebut the defendant's evidence, but that plaintiff has failed to cite.  See Mitchell, 218 F.3d at 1199; Adler, 144 F.3d at 672.  All material facts set forth in the statement of defendant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of plaintiff.  See id.; Gullickson v. Southwest Airlines Pilots' Ass'n, 87 F.3d 1176, 1183 (10th Cir. 1996) (applying local rules of District of Utah).  A standing order of this court also precludes drawing inferences or making arguments within the statement of facts.

The parties need not present evidence in a form that would be admissible at trial, but the content or substance of the evidence must be admissible.  See Thomas v. Int'l Bus. Machs., 48 F.3d 478, 485 (10th Cir. 1995) (internal quotations and citations omitted).  For example, hearsay testimony that would be inadmissible at trial may not be included.  See Adams, 233 F.3d at 1246.  Similarly, the court will disregard conclusory statements and statements not based on personal knowledge.  See Cole v. Ruidoso Mun. Schs., 43 F.3d 1373, 1382 (10th

-7-

Cir. 1994) (regarding conclusory statements); <u>Gross v. Burggraf</u> <u>Constr. Co.</u>, 53 F.3d 1531, 1541 (10th Cir. 1995) (requiring personal knowledge). Finally, the court may disregard facts supported only by references to documents unless the parties have stipulated to the admissibility of the documents or the documents have been authenticated by and attached to an affidavit meeting the requirements of Rule 56(e). <u>See</u> Fed. R. Civ. P. 56(e); D. Kan. Rule 56.1; 10A Charles Alan Wright, et al., <u>Federal Practice and Procedure</u> § 2722 (2d ed. 1983) (footnotes omitted).

In the end, when confronted with a fully briefed motion for summary judgment, the court must determine "whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Anderson</u> <u>v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986). If sufficient evidence exists on which a trier of fact could reasonably find for the plaintiff, summary judgment is inappropriate. <u>See</u> <u>Prenalta Corp. v.</u> <u>Colo. Interstate Gas Co.</u>, 944 F.2d 677, 684 (10th Cir. 1991).

## III. ANALYSIS

Defendants' set out four grounds in support of their motion: 1) the United States has not waived its sovereign immunity with respect to fourteen of the summonses because plaintiff's motion to quash was untimely; 2) defendants Commissioner and Meyeres are not proper parties; 3) the United States has met all the requirements for demonstrating the validity of the summonses; and 4) the motion to quash fails to state a claim upon which relief can be granted because it states no legally sufficient defense to the summonses. (Doc. 4 at

1.)

**A.  Timeliness**

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." FDIC v. Meyer, 510 U.S. 471, 475 (1994).  In addition, "[s]overeign immunity is jurisdictional in nature.  Indeed, the terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit." Id. (internal quotation omitted).  A waiver of the United States' sovereign immunity "must be unequivocally expressed in statutory text," "will not be implied," and "will be strictly construed, in terms of its scope, in favor of the sovereign." Lane v. Pena, 518 U.S. 187, 192 (1996).

"The existence of consent is a prerequisite for jurisdiction." Thus, if the government has not consented to suit, the courts have no jurisdiction to either restrain the government from acting, or to compel it to act." United States v. Murdock Mach. & Engineering Co., 81 F.3d 922, 930 (10th Cir. 1996).  "When the government consents to be sued, it can impose conditions on that consent. . . .  The government does not consent to be sued when such a condition is not met, so sovereign immunity generally requires dismissal of the suit if the plaintiff does not satisfy all conditions imposed by the government." San Juan County, Utah v. United States, 503 F.3d 1163, 1175 (10th Cir. 2007).

The Internal Revenue Code very specifically sets out the steps required for service of a summons.  Section 7602 of the code is broadly applicable.  It states, in pertinent part:

(a)  Authority to summon, etc.--For the purpose of

-9-

ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized--

    (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

    (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

    (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

(b) Purpose may include inquiry into offense.--The purposes for which the Secretary may take any action described in paragraph (1), (2), or (3) of subsection (a) include the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws.

(c) Notice of contact of third parties.--

    (1) General notice.--An officer or employee of the Internal Revenue Service may not contact any person other than the taxpayer with respect to the determination or collection of the tax liability of such taxpayer without providing reasonable notice in advance to the taxpayer that contacts with persons other than the taxpayer may be made.

    (2) Notice of specific contacts.--The Secretary shall periodically provide to a taxpayer a record of persons contacted during such period by the Secretary with respect to the determination or collection of the tax liability of such taxpayer. Such record shall also be provided upon request of the taxpayer.

-10-

(3) Exceptions.--This subsection shall not apply-

(A) to any contact which the taxpayer has authorized;

(B) if the Secretary determines for good cause shown that such notice would jeopardize collection of any tax or such notice may involve reprisal against any person; or

(C) with respect to any pending criminal investigation.

. . .

(e) Limitation on examination on unreported income.--The Secretary shall not use financial status or economic reality examination techniques to determine the existence of unreported income of any taxpayer unless the Secretary has a reasonable indication that there is a likelihood of such unreported income.

26 U.S.C. § 7602.

Section 7603 of the code is also applicable.  Section 7603(a) requires that the summons issued be by "an attested copy" and states that the summons must either be served in hand to the person to whom it is directed or left at that person's last know address.  26 U.S.C. § 7603(a).  Section 7603(b) requires specific actions for service of a summons to a third-party record keeper, defines who is considered a third party record keeper, and states that the summons, as referred to in section 7602(a), may also be served by certified or registered mail to the last known address of the record keeper.  26 U.S.C. § 7603(b).  In addition, portions of the Code of Federal Regulations are applicable to the service of a summons.  See 26 C.F.R. §§ 301.7602-1 through 301.7611-1.

The Internal Revenue Code also sets out procedures specifically relative to third party summonses.  Section 7609(b)(1) grants the

-11-

right to intervene to the person to whom a third-party summons relates. Section 7609(b)(2)(A), however, limits the right to intervene. It states that the intervenor "shall have the right to begin a proceeding to quash such summons not later than the 20th day after such notice is given." Regarding this section, the Tenth Circuit has held:

> Construing section 7609 strictly, the plain language of the statute indicates motions to quash must be filed within twenty days from the date notice is given. Notice is given on the date it is mailed. The government's waiver of sovereign immunity ends-and thus jurisdiction ends-when the twenty-day limitation period has run.

Faber v. United States, 921 F.2d 1118, 1119 (10th Cir. 1990) (internal quotation omitted).[4]

Plaintiff admits that Meyeres' served fourteen of the summonses on November 14, 2007, and mailed notice to plaintiff the same day.

---

[4]  The Faber court explained:

The brief opportunity this twenty-day waiver provides for taxpayers to challenge a third party summons is best explained by practical administrative concerns. As Circuit Judge Rubin pointed out for the court in Masat v. United States, 745 F.2d 985, 987 (5th Cir. 1984), the provision was added in 1982. It eliminated the simple method of instructing a third-party recordkeeper in writing not to comply with an IRS summons and substituted the current procedure, which requires a taxpayer to institute a court action to quash a summons. This change in procedure was based on the fact objections were mainly dilatory, most taxpayers failed to contest the summons when the Internal Revenue Service sought enforcement, and, when they did, the Internal Revenue Service prevailed in the vast majority of actions it brings to enforce third-party summons. The Senate committee report states that shifting the burden to initiate proceedings would eliminate most of the frivolous delay without adversely affecting the rights of taxpayers.

Faber, 921 F.2d at 1119-20 (internal quotations, alterations, and citations omitted).

Plaintiff also admits that his motion to quash was not filed until December 5, 2007, twenty-one days after these summonses were served and notice was given to him.  (Doc. 11 at 2-3.)

Plaintiff, however, filed a "motion for extension of time to perform an act," in which plaintiff claims "excusable neglect" for failing to file his motion to quash within twenty days.  Plaintiff explains that he filed his motion to quash in the wrong court (the Saline County, Kansas court) on November 26, 2007, realized his mistake on December 4, 2007, and corrected his mistake on December 5, 2007.  Plaintiff asks the court for a "ruling that the motion was filed in a timely manner," pursuant to D. Kan. Local Rule 6.1.  (Doc. 5.)  Plaintiff later states that "due to his pro se status and unfamiliarity with the court system, his actions at that time certainly and surely amount to excusable neglect." (Doc. 8 at ¶ 17.)

Local Rule 6.1 provides this court no authority to create the fiction that plaintiff's motion to quash was filed earlier than reality dictates.  Local Rule 6.1 is merely authority for the court to manage its own deadlines for responding to motions or to perform some other court act.   It is not authority for the court to fictionalize plaintiff's compliance with a statutorily mandated twenty day filing period.  In addition, there is extensive precedent holding that waivers of sovereign immunity must be strictly construed.  See, e.g., Lane v. Pena, 518 U.S. 187, 192 (1996).

Plaintiff filed his motion to quash outside of the limited waiver of sovereign immunity of twenty days.  The federal government has not waived sovereign immunity for motions to quash filed outside of this twenty-day waiver.  This court has no jurisdiction over suits against

the federal government unless sovereign immunity has been waived. Plaintiff also makes several attempts to avoid the law stated in <u>Faber</u>, <u>i.e.</u>, that "Notice is given on the date it is mailed." Plaintiff claims that Federal Rule of Civil Procedure 6(d)[5] grants him an extra three days for mail time, that the "mailbox rule" should not apply, that 26 U.S.C. § 7609(a)(1) requires notice be given three days before service of third-party summonses, and that he should be allowed "one day for mail time." (Doc. 11 at 3.)

Plaintiff's arguments in this regard are also quickly disposed of. First, Rule 6 applies only to pleadings or papers made under the Federal Rules of Civil Procedure, not to statutorily required timelines. Second, the mailbox rule is not applicable to the case at hand. <u>See</u> <u>Gibson v. Commissioner</u>, No. 07-9008, 2008 WL 382393 (10th Cir. Feb. 12, 2008) (discussing applicability of mailbox rule to Internal Revenue Code) (citing <u>Sorrentino v. IRS</u>, 383 F.3d 1187 (10th Cir. 2004)). Third, § 7609(a)(1) required only that notice be given to plaintiff "within 3 days of the day on which such service [of summons] is made." Clearly, the section does not require advance notice, as plaintiff claims, and notice that is given the same day as the summonses is sufficient under the statute. Finally, the court has no authority to grant plaintiff "one day for mail time" in the face of the well-settled law of sovereign immunity.

Plaintiff's motion to quash the fourteen summonses served November 14, 2007 is untimely. Defendant's motion is granted as to

---

[5]   Rule 6(d), which grants three extra days to act when a pleading or paper is served by mail, by leaving it with the court clerk, by sending it by electronic means, or by delivering it by a consented-to means, was formerly numbered Rule 6(e).

these summonses.[6]

## B.  Proper Parties

"In general, federal agencies and officers acting in their
official capacities are also shielded by sovereign immunity." Merida
Delgado v. Gonzales, 428 F.3d 916, 919 (10th Cir. 2005).  A lawsuit
brought against federal officers is treated as a claim against the
United States when the relief sought will be obtained from the
sovereign entity, not the officer personally. Blackbear v. Norton,
93 Fed. Appx. 192, 194 (10th Cir. 2004) (citing Larson v. Domestic &
Foreign Commerce Corp., 337 U.S. 682 (1949), superceded in part by 5
U.S.C. § 702); United Tribe of Shawnee Indians v. United States, 253
F.3d 543, 548 (10th Cir. 2001) (same).

Plaintiff's motion to quash will be treated as a claim solely
against the United States, because an order from this court to quash
the summonses would be obtained from the United States, not from the
Commissioner or Meyeres individually.

## C.  Validity of and Defenses to Summonses

Plaintiff argues that the summonses were not "perfected," that
they lack "legal moving requisite," that the IRS lacks authority to
issue summonses, that the summonses violate the Fair Debt Collection
Practices Act, that the summonses were issued for an improper purpose,
that the summonses were not attested, that the summonses violate his
Fourth Amendment rights, that the summonses were not issued by someone

---

[6]    The court also finds that the motion to quash fails for the
additional reasons stated in the following sections.  For this reason,
the court discusses all the summonses in its analysis below, because
the motion to quash fails as to all of them for the multitude of
reasons discussed herein.

with authority, that a summons issued by an IRS Revenue Agent must have a signature of a magistrate judge, and that he is not subject to the federal tax laws. (See Docs. 1, 5, 8, 10, 11.)

The IRS has "broad latitude" to enforce its provisions. See United States v. Euge, 444 U.S. 707, 715-16 (1980) ("There is thus a formidable line of precedent construing congressional intent to uphold the claimed enforcement authority of the Service if such authority is necessary for the effective enforcement of the revenue laws and is not undercut by contrary legislative purposes."). The IRS "need not meet any standard of probable cause to obtain enforcement of his summons." United States v. Powell, 379 U.S. 48, 57 (1964).

However, the IRS "must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed." Id. at 57-58; see also Abell v. Sothen, 214 Fed. Appx. 743, 755 (10th Cir. 2007) (applying Powell factors); United States v. Edwards, 172 Fed. Appx. 844, 846 (10th Cir. 2006) (same). "The Powell requirements impose only a minimal burden on the agency, and can usually be satisfied by an affidavit stating that the government has met them. Once the government meets this prima facie burden, the taxpayer faces a heavy burden to either present facts to disprove one of the Powell factors, or to show that the IRS issued the summons in bad faith. The taxpayer can rebut the government's prima facie case only by alleging specific facts in rebuttal." Edwards, 172 Fed. Appx. at 846 (internal quotations and citations omitted). The government has provided an

-16-

affidavit from Meyeres' stating that the <u>Powell</u> requirements were met.

In his attack on the summonses, plaintiff first alleges that the summonses violate the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 through 1692p. The FDCPA applies to "debt collection practices by debt collectors." 15 U.S.C. § 1692(e). A "debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). A "debt collector" is a person engaged in "the collection of debts" and the definition specifically excludes "an officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties." 15 U.S.C. §§ 1692a(6), 1692a(6)(C). Contrary to plaintiff's assertion, therefore, federal taxes are not a debt, and the IRS is not a debt collector. The FDCPA does not apply.

Plaintiff next claims that the summonses were issued as part of a criminal investigation. Meyeres' affidavit contradicts this. Regardless, until the time the IRS refers a matter to the Justice Department for criminal investigation, it may validly issue a summons under § 7602 even for the sole purpose of a criminal investigation. <u>United States v. Schmidt</u>, 816 F.2d 1477, 1481 n.4 (10th Cir. 1987) ("Congress intended to provide the IRS the authority to issue a summons [under § 7602], so long as the tax matter has not been referred to the Justice Department for criminal prosecution, for the purpose of inquiring into any offense connected with the

-17-

administration or enforcement of the Internal Revenue laws, even when the criminal investigation is the sole investigation.").

Third, plaintiff claims the summonses were not attested. Again, Meyeres' affidavit contradicts this. Section 7603(a) requires that a summons issued to a third-party record keeper be by "an attested copy" and states that the summons must either be served in hand to the person to whom it is directed or left at that person's last know address. 26 U.S.C. § 7603(a). Meyeres' affidavit states that each summons was properly attested, which is sufficient to meet the government's burden. Codner v. United States, 17 F.3d 1331, 1332-33 (10th Cir. 1994) (stating that the IRS' burden of showing the prima facie legitimacy of a summons is slight and generally met through an affidavit of the agent issuing the summons). In addition, it is irrelevant whether plaintiff's copy of the summonses were attested copies. Id. at 1333-34 (holding that the copy of the summons issued to the taxpayer need not be attested).

Fourth, plaintiff claims the summonses violated his Fourth Amendment rights. A bank depositor, however, has no protectible Fourth Amendment right in bank records. United States v. Miller, 425 U.S. 435, 440 (1976); In re First Nat. Bank, Englewood, Colo., 701 F.2d 115, 117-18 (10th Cir. 1983) (summarizing this point from Miller). This is true regardless of the validity of the summonses and regardless of whether a criminal prosecution is contemplated. Id. at 444. Plaintiff does not appear to be making a due process claim, but if he was, his due process rights are being protected by the very procedure plaintiff is utilizing here--a motion to quash, pursuant to section 7609.

-18-

Fifth, plaintiff claims the summonses were not issued by someone with authority.   Section 7602(a) states that "the Secretary is authorized" to issue summonses, but does not explicitly refer to the Secretary's delegation of that authority.   Section 7602 clearly gives authority to the IRS to issue summonses.   In addition, revenue agents, such as Meyeres, have been authorized to issue summonses.   26 C.F.R. 301.7602-1(a) (granting authority to "any authorized officer or employee of the Internal Revenue Service"); IRS Delegation Order 4 (specifically granting the authority to revenue agents).   The Secretary is permitted to delegate this authority.   <u>See</u> 26 U.S.C. § 7701(a)(11)(B) (defining Secretary as "the Secretary of the Treasury or his delegate"); 7701(a)(12) (defining the term "or his delegate" as ""any officer, employee, or agency of the Treasury Department duly authorized by the Secretary of the Treasury directly, or indirectly by one or more redelegations of authority, to perform the function mentioned or described").   Meyeres was authorized to issue the summonses.

Finally, plaintiff attempts to challenge the summonses by arguing that he is not "subject to or liable for the income tax." (Doc. 8 at ¶ 30, ¶¶ 36-44, Exh. H; Doc. 11 at 9, 12-13, Exh. 1.)   Whether plaintiff is or is not liable for income tax for tax years 2000 through 2006 is irrelevant to whether the IRS had the statutory authority to summons plaintiff's financial records.   The IRS has to have complete information to determine whether plaintiff is, in fact, liable for past unpaid taxes.

The government has met its "minimal" prima facie burden under <u>Powell</u>.   Plaintiff has not met his "heavy burden to either present

-19-

facts to disprove one of the <u>Powell</u> factors, or to show that the IRS issued the summons in bad faith." <u>Edwards</u>, 172 Fed. Appx. at 846. Defendants' motion must be granted.

**IV.   CONCLUSION**

Defendants' converted motion for summary judgment (Doc. 3) is GRANTED for the reasons stated more fully herein.  All other pending motions (Docs. 1, 5) are denied as moot.  The clerk is directed to enter judgment for defendants pursuant to Rule 58.

A motion for reconsideration of this order is not encouraged. Any such motion shall not exceed 3 double-spaced pages and shall strictly comply with the standards enunciated by this court in <u>Comeau v. Rupp</u>, 810 F. Supp. 1172, 1174 (1992).  The response to any motion for reconsideration shall not exceed 3 double-spaced pages.  No reply shall be filed.

IT IS SO ORDERED.

Dated this   24th   day of April, 2008, at Wichita, Kansas.

s/Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE

-20-